## FOWLER *v.* RAPLEY.

Under the landlord and tenant law of the District of Columbia, as regulated by the act of Congress of February 22d, 1867, the "tacit lien" given by the act upon certain of the tenant's personal chattels, on the premises, attaches at the commencement of the tenancy to any such chattels then on the premises, and continues to attach to them into whosesoever hands the chattels may come during the time allowed by the act for instituting proceedings, unless the lien is displaced by the removal of the chattels, or by the sale of them by the tenant in the ordinary course of mercantile transactions. It is not displaced by a sale of the stock in mass, while they remain in mass, to a person who knew that the premises were leased, and continues to occupy them, selling in the ordinary way the goods; nor even by a second sale of that sort.

APPEAL from the Supreme Court of the District of Columbia; the case being thus:

An act of Congress of February 22d, 1867,* abolishes the right of distress in the District of Columbia, and enacts that

"Instead of it the landlord shall have a tacit lien upon such of the tenant's personal chattels, upon the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due, and until the termination of any action for such rent brought within said three months. And this lien may be enforced—

"*First.* By attachment, to be issued upon affidavit that the rent is due and unpaid; or if not due, that the defendant is about to remove or sell all or some of said chattels; or,

"*Second.* By judgment against the tenant, and execution to

---

* 14 Stat. at Large, 404.

be levied on said chattels or any of them, *in whosesoever hands they may be found;* or,

"*Third.* By action against the purchaser of any of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant, but not exceeding the rent in arrear and damages."

In this condition of the statutory law the firm of Stackpole & Hall engaged in selling lumber and ice, at wholesale and retail, in the city of Washington, on the 1st of July, 1867, rented a wharf, in the said city, for the purpose of a lumberyard and ice-houses, from one Rapley, at the monthly rent of $100. Stackpole & Hall carried on their business, on the premises, until the 23d of November, 1867, when they sold out their stock of ice and lumber to one Perkins, *rent being at this time due, and in arrear from the 1st day of the preceding August.* Perkins immediately took possession of the stock and of the premises, and continued the business until the 14th of January, 1868, when, *there having been no discharge of the arrears of rent,* he sold the stock, and delivered the same to one Fowler, who immediately took possession of the premises, and continued the business thereon.

On the 24th of January, 1868, Rapley sued Stackpole & Hall for rent in arrear, to wit, $100 per month for the months of August, September, October, November, and December, 1867, and caused an attachment to be issued under the act of Congress above quoted, and under the same the marshal seized upon part of the property which had belonged to Stackpole & Hall, and had been by them sold to Perkins, and by Perkins to Fowler, and which had not been removed from the premises.

Both Perkins and Fowler knew, at the time of their respective purchases, that the premises were rented premises, but neither of them had notice otherwise than by implication from the facts above set forth, that the rent was in arrear.

Upon this case, which was stated for the opinion of the court below, that court, on a writ of replevin issued by Fowler against Rapley and the marshal for the seized prop-

erty, gave judgment for the defendants. This judgment Fowler now brought here for review.

*Mr. Enoch Totten, for the plaintiff in error :*

1. *By the two sales of property the landlord's lien was discharged.*

The case states that while each of the purchasers knew that the premises were rented, neither of them knew that rents were in arrear. The landlord, it seems, had permitted the rents to remain in arrear six months, and then without taking any action to secure his money, allowed a sale of all the chattels to be made to an innocent purchaser. He stood, stupidly gazing, until this purchaser had parted with his money and was in lawful possession of the property. Then he seizes it.

The statute declares positively what the remedy shall be against a purchaser of chattels on the premises *with* notice of the lien, and gives no remedy against a purchaser *without* notice. This necessarily leads to the construction that a *bonâ fide* sale, without notice, discharges the property from the operation of the lien.

And so in *Webb* v. *Sharp*,\* where this court enforced a landlord's lien as against a subsequent mortgagee, Bradley, J., says:

"Goods sold in the ordinary course of business *undoubtedly* become discharged from the lien, otherwise business could not be safely carried on."

2. *Even if the chattels were taken by the purchasers with notice of the lien, it was unlawful for the landlord to proceed against the property by attachment.*

The statute authorizes this process to be used for the purposes, only, of holding the property for judgment after the rent has become due, and to prevent a sale or removal thereof. In cases where a sale has been perfected, the remedy is explicitly pointed out in the third subdivision of the said section. The landlord must resort to his action at

---

\* 13 Wallace, 14.

law against the purchaser, instead of seizing the chattels by attachment.

*Messrs. T. J. Miller and R. T. Merrick, contra:*

The landlord's lien, under the act of 1867, attaches at the commencement of the tenancy, or whenever personal chattels, owned by the tenant and subject to execution for debt, are brought on the rented premises.

This lien once attaching continues upon the chattels to which it attaches, into whosesoever hands they may come during the time limited for instituting proceedings; unless, *probably* where the chattels are disposed of by the tenant *in the ordinary course of mercantile transactions.*

In providing a personal remedy "*by action against any purchaser of any of said chattels with notice of the lien,*" the law, by implication, permits the landlord, when proceeding against the chattels *in specie,* to reach them into whosesoever hands they may be found, whether the holder had notice of the lien or not.

The plaintiff, as assignee of the unexpired term and of the personal chattels on the premises, was put upon inquiry as to the terms and conditions of the tenancy; he was therefore bound to know the charges upon the goods that existed by reason of the tenancy; and he can occupy with respect to the landlord's right—as such—to the goods on the premises, no better position than did his assignor.

Decisions of the courts of Iowa, Missouri, Alabama, and Arkansas in interpreting statutes of those States,* nearly similar in their provisions to the act of Congress now under consideration, sustain these views.†

At common law a purchaser of goods and chattels takes them subject to the same liens which existed against the vendor.‡

---

* Iowa Code, §§ 1270–1271; Missouri Revised Statutes, 1613; Arkansas Revised Statutes, 679; Clay's Alabama Digest, 505.

† Grant *v.* Whitwell, 9 Iowa, 153; Powell *v.* Hadden's Ex'r, 21 Alabama, 745; Sevier *v.* Shaw, 25 Arkansas, 417; Smith *v.* Meyer, Ib. 609.

‡ Man *v.* Shiffner, 2 East, 523; Godin *v.* London Assurance Company, 1 Burrow, 489; Burton *v.* Smith, 13 Peters, 464.

Mr. Justice CLIFFORD delivered the opinion of the court.

Congress, on the twenty-second of February, 1867, abolished the power previously claimed and exercised as of common right by every landlord in this District, of seizing by his own authority the personal chattels of his tenant for rent arrear, and instead of it, provided that the landlord shall have a tacit lien upon such of the tenant's personal chattels upon the premises as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due and until the termination of any action for such rent brought within said three months.*

Hall & Stackpole, on the first day of July, 1867, rented a wharf, situated in this city, of the first named defendant, for a site for ice-houses and for a lumber yard, at the monthly rent of one hundred dollars. As lessees they took possession of the premises, and carried on there the business of buying and selling lumber and ice until the twenty-third of November following, when they sold out their entire stock of lumber and ice to J. M. Perkins, as appears by the written agreement which is made a part of the case. Perkins immediately took possession of the premises and of the stock embraced in the sale, and continued the business until the fourteenth of the succeeding January, when he sold all that remained of the stock and delivered the same to the plaintiff. At the time of the first sale rent was due from the lessees from the first day of August of that year. On the twenty-fourth of January of the next year the lessor sued the lessees for rent in arrear, to wit, for one hundred dollars per month for the months of August, September, October, November, and December of the previous year, and caused an attachment to be issued under section twelve of the before-mentioned act of Congress, and it appears that the marshal, who is the other defendant, under that process attached the property which is the subject of controversy in this case. By the agreed statement it also appears that the property so attached was a part of the stock which had be-

---

* 14 Stat. at Large, 404.

longed to Hall & Stackpole, and had been by them sold to Perkins, and which was sold by Perkins to the plaintiff, and that it had not been removed from the premises at the time of the attachment. Both of the purchasers knew at the time of their respective purchases that the premises were rented premises, but neither of them had special notice of that fact, or any notice thereof, except by implication from the facts set forth, and that the rent was in arrear. Five hundred and thirty tons of ice were attached by the marshal, of the alleged value of two thousand dollars, and the plaintiff sues the defendants for wrongfully taking and unjustly detaining the ice, claiming the same as his property, and that the same should be taken from the defendants and delivered to him, or if eloigned, that he may have judgment for the value of the ice and all *mesne* profits and damages, which he estimates at one thousand dollars, exclusive of costs.

Two pleas were pleaded by the defendants: (1.) That they were not guilty. (2.) That the goods and chattels were not the property of the plaintiff; that they were attached on the described premises as the property of the lessees of the same to answer to the first-named defendant for rent due to him and unpaid by the lessees in the sum of five hundred dollars. Issue was joined on those pleas, and the cause, by consent of parties, was referred. Subsequently the referee, having heard the parties, made an award in favor of the defendants. Exceptions to the report or award of the referee were filed by the plaintiff, and the court, after argument, passed an order that the award be set aside and vacated, holding that the award was based upon an erroneous construction of the act of Congress.

By the twelfth section of the act it is provided, that instead of the right to seize the tenant's personal chattels for rent in arrear, the landlord shall have a tacit lien upon such chattels situated on the premises as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due. Pursuant to that enactment the referee decided that the lien commenced with the tenancy, that it

attached immediately to the chattels in question, and that it continued for three months after the rent became due, or until the termination of an action brought to recover the rent within three months; that the only conditions are that the chattels shall belong to the tenant at the commencement of the tenancy, or at any time during its continuance, if within three months after the rent falls due, and that the chattels shall be on the premises, and be subject to execution. Contrary to the views of the plaintiff, the referee held that the sales of the chattels did not displace the lien or impair the right of the lessor; that the lien, when it once attached, continued for the period prescribed by the act of Congress, and that the sales, without removing the ice from the premises, did not extinguish the lien or affect the validity of the attachment. Dissatisfied with the order of the court setting aside and vacating the award of the referee, the defendants appealed to the court sitting in general term, where the judgment of the subordinate court was affirmed. Judgment was accordingly entered for the plaintiff in the sum of fifty dollars, with costs of suit. Two days afterwards the parties filed in the case an agreed statement of facts, the substance of which has already been reproduced, and the parties having been again heard, the court decided that there was manifest error in the proceedings, and reversed the judgment, and entered judgment for the defendants, and for a return of the ice replevied, and for the costs of their defence. Whereupon the plaintiff sued out a writ of error, and removed the cause into this court.

Based on the agreed statement of facts, the plaintiff assigned two errors, as follows: (1.) That by the two sales of the property the lien was discharged. (2.) That the landlord was not authorized by the act of Congress to proceed by attachment against the chattels, they having been twice sold.

Congress abolished the right of distress previously claimed and exercised in such cases as of common right, and instead of it provided that the landlord should have a tacit lien upon such of the personal chattels of the tenant situated upon the

premises as were subject to execution for debt, and enacted that the lien should commence with the tenancy, and continue for three months after the rent became due, and until the termination of any action for such rent brought within said three months. Provision is also made by the same section of the act, that the lien may be enforced by the landlord in three ways: (1.) By attachment to be issued upon affidavit that the rent is due and unpaid, or if not due, that the defendant is about to remove or sell all or some of said chattels. (2.) By judgment against the tenant, and execution to be levied on said chattels, or any of them, in whosesoever hands they may be found. (3.) By action against any purchaser of any of said chattels, in which action he may have judgment for the value of the chattels, not exceeding the rent in arrear and damages.

He elected in this case to adopt the first mode, and sued out an attachment to enforce the lien on the ice in controversy, which was upon the premises, and was clearly subject to execution for debt, and had been there before the rent fell due, and remained there when the attachment was issued.

Beyond doubt the tenants owned the ice, and they sold it and the remainder of their term, with all their other personal property, to the grantor of the plaintiff, and he transferred the goods in bulk, and all the other personal property on the premises, together with the unexpired term, to the present plaintiff, who took possession of the whole personal property, and entered upon the premises, and continued the business under the lease.

Repeated decisions in other jurisdictions have settled the question, that the lien in such cases attaches at the commencement of the tenancy, or whenever personal chattels owned by the tenant and subject to execution for debt are brought on the rented premises.* Statutory liens without possession have the same virtue that existed in common law

* Grant *v.* Whitwell, 9 Iowa, 153; Carpenter *v.* Gillespie, 10 Id. 592; Doane *v.* Garretson, 24 Id. 351 ; Powell *v.* Hadden, 21 Alabama, 748; Sevier *v.* Shaw, 25 Arkansas, 417; Smith *v.* Meyer, Ib. 609.

liens accompanied by possession.* Liens like the one in the case before the court are upon the chattels in bulk, or the stock in mass and not in detail, or rather the lien is displaced where the goods are sold in the usual course of trade carried on by the tenant, provided they are duly delivered, and do not remain on the premises.† Purchasers of goods and chattels take them at common law, subject to the liens which existed against the vendor, and the same rule applies in a case arising under the act of Congress in question, where the purchase is of the stock in mass, which is not removed from the premises, or with knowledge of the lien, and not in the usual course of trade.‡ Sales of the stock in mass, which is not removed, or not made in the ordinary course of trade on the premises, and with knowledge of the lien, are subject to that rule under this provision, and the landlord may have his remedy for the same "in whosesoever hands they may be found." Personal chattels sold in the ordinary course of trade on the premises, without knowledge of the lien, are not subject to the lien, or, in other words, the lien in respect to such sales, where the goods are removed from the premises, is displaced, and the purchaser takes a perfect title to the property discharged of the lien. Goods sold in the ordinary course of trade, said this court,§ undoubtedly become discharged from the lien, because if it were not so, business could not be safely carried on; but the court held, in the same case, that the lien created by that act of Congress commences with the tenancy, and continues for three months after the rent is due, which cannot be true for any practical effect if it be admitted that the sale of the personal property in bulk, when not removed from the premises, and not in the usual course of trade, prevents the landlord from levying on the chattels

---

* Grant *v*. Whitwell et al., 9 Iowa, 153.

† Ib.; Carpenter *v*. Gillespie, 10 Id. 592; Doane *v*. Garretson, 24 Id. 351.

‡ Man *v*. Shiffner, 2 East, 523; Godin *v*. London Assurance Co., 1 Burrow, 489; Burton *v*. Smith, 13 Peters, 483.

§ Webb *v*. Marshal, 13 Wallace, 15; Knox *v*. Porter et al., 18 Missouri, 243.

"in whosesoever hands they may be found." Unquestionably the lien, when it once attaches, continues to attach to the chattels into whosesoever hands the chattels may come during the time allowed for instituting proceedings, unless the lien is displaced by the removal of the goods, or by the sale of the chattels by the tenant in the ordinary course of mercantile transactions. Support to that view is found in the fact that the act of Congress, in providing a personal remedy by action against the purchaser with notice of the lien, evidently intends to permit the landlord to reach the chattels in whosesoever hands they may be found, if the chattels were not sold in the usual course of business.

JUDGMENT AFFIRMED.